UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES,

                   Plaintiff,

       – *against* –

ANTHONY SEAN YANCEY,

                 Defendant.

**<u>ORDER</u>**

17 Crim. 297

<u>Ramos, D.J.</u>:

     Before the Court is Anthony Sean Yancey's application for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the COVID-19 pandemic and the heightened risk it presents to him because he is obese, has hypertension, and is pre-diabetic.  Doc. 123.  For the following reasons, Yancey's application is DENIED.

## I.   BACKGROUND

     On April 18, 2017, while on federal supervised release, Anthony Sean Yancey was arrested along with five other individuals in connection with the attempted sale of approximately three kilograms of heroin to an undercover law enforcement officer.  The sale would have totaled over $150,000.  At the urging of his former cellmate, who had become a government informant, Yancey took on a central role in the transaction, serving as the undercover officer's primary point of contact and instructing his co-defendants to vet the undercover officer and to send him samples.  Though he did not have a firearm during the transaction, some of his co-defendants did.

     On December 13, 2017, Yancey pled guilty pursuant to a plea agreement to conspiracy to distribute and possess with the intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A).  At sentencing, Yancey argued that he did not qualify as a career offender pursuant to U.S.S.G. § 4B1.1; however, the Court disagreed.  As a result, the calculated guidelines range was 262 to 327 months of

imprisonment, with a mandatory minimum of 120 months.  In imposing sentence, the Court considered several factors, including Yancey's extensive criminal history, including the fact that he was on federal supervised release at the time of his arrest; the seriousness of the offence; and multiple letters of support and other materials from Yancey's family and friends.  At sentencing, the Court remarked that it was a "mystery" how someone with Yancey's family life and potential would repeatedly involve themselves in illegal schemes.  Doc. 113 at 57:4–7.  The Court also remarked that Yancey's two co-conspirators had each been sentenced to 72 months, but that, even though the conspiracy was non-hierarchical, the Government "[f]or reasons sufficient for themselves" had determined that Yancey ought to be required to plead to a minimum of 120 months.[1]  *Id*. at 56:8–14.  After considering these factors, the Court imposed a below-guidelines sentence of 120 months, followed by five years of supervised release.[2]

Yancey began serving his sentence on April 17, 2017,[3] and is housed at FCI Butner Medium II ("Butner Medium") in North Carolina.  The Butner Correctional complex, which consists of four facilities, including Butner Medium, has been largely recognized as the site of a widespread COVID-19 outbreak.  *See, e.g.*, *United States v. Scparta*, No. 18 Crim. 578 (AJN), 2020 WL 1910481, at *1 (S.D.N.Y. Apr. 20, 2020); *United States v. El-Hanafi*, 10 Crim. 162 (KMW), 2020 WL 2538384, at *4 (S.D.N.Y. May 19, 2020).  As of July 13, the Butner Complex has had nearly 1,000 inmates and guards test positive for the virus, and 28 people have died.  Doc. 123 at 5.  According to Yancey, overcrowding makes it impossible to socially distance, and staff and incarcerated individuals with certain jobs regularly travel between facilities, making it nearly

---

[1] As Yancey notes, the three other members of the conspiracy who pleaded guilty now have less than a year remaining on their sentences.  Doc. 123 at 15.

[2] Notably, this sentence was also below the calculated guidelines range of 168–210 months of imprisonment that would have been recommended if Yancey had not been designated as a career offender.

[3] Yancey has served approximately 39 months of his sentence and is currently scheduled to be released on October 24, 2025.

impossible to isolate an outbreak. *Id.* at 6. This means that "Mr. Yancey is stuck in his cell all day long, only to break social distancing when it is time to use the communal showers, phones, and computers, which are shared amongst all the men and are not regularly cleaned." *Id.* Yancey also recounts that at Butner Medium, incarcerated individuals must request a sick call—which costs $2—in order to get their temperatures taken. *Id.* Rather than checking staff for symptoms, Butner relies on self-reporting. *Id.*

Rather than respond directly to Yancey's contentions, the Government maintains broadly that "BOP has made significant efforts to respond" to the COVID-19 pandemic." Doc. 126 at 6. Though it does not describe the conditions at Butner Medium specifically, it details a phased plan by which BOP has taken steps to limit the risk of a COVID-19 outbreak, including restricting the movement of incarcerated individuals, making cleaning supplies readily available, and implementing more stringent screening and quarantine procedures. According to the Government, "[t]hese measures appear to be working so far at [Butner Medium]," as the BOP website reflects that there is only one inmate at Butner Medium who is currently being isolated after testing positive for COVID-19, and two other inmates who have recovered after testing positive. *Id.* at 8.[4] The Government does, however, concede that "FCI Butner Low—a separate facility within the Federal Correctional Complex in Butner, North Carolina—and other BOP facilities around the country have had larger numbers of COVID-19 infections." *Id.* It also does not contest that of the over 1,400 inmates at Butner Medium, fewer than 5% have been tested.[5]

Yancey filed an application for compassionate release with the warden at FCI Butner on May 9, 2020. Over thirty days have passed, and the warden has yet to address

---

[4] On reply, Yancey reports that three incarcerated men and one staff member have tested positive. Doc. 127 at 4.

[5] In his motion, Yancey maintains that 55 inmates had been tested at Butner Medium. Doc. 123 at 4. On reply, he states that this number has gone up to 67. Doc. 127 at 4.

Yancey's application.  As such, Yancey filed this motion for compassionate release on July 15, 2020.  Doc. 123.  The Government submitted its opposition on July 16, 2020, Doc. 126, and Yancey filed his reply on July 21, 2020, Doc. 127.

## II.   LEGAL STANDARD

### A.  18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release."  *See United States v. Roberts*, No. 18 Crim. 528, 2020 WL 1700032 (JMF), at *1 S.D.N.Y. Apr. 8, 2020 (citing 18 U.S.C. § 3582(c)(1)(A)).  A court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).

Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement in U.S. Sentencing Guidelines § 1B1.13.  *See Id.* § 3582(c)(1)(A).  The Guidelines place two conditions on a determination of early release:

> (1) There are extraordinary and compelling reasons that warrant the reduction and

> (2) A situation where "the defendant is not a danger to the safety of any other person or to the community."

§ 1B1.13.  The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.* cmt. 1(A)(ii)(I).

When determining whether a prisoner is a danger to the community, section 1B1.13 refers to 18 U.S.C. § 3142(g), which in turn lists the following factors to be considered:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).

## III.  DISCUSSION

The Government does not dispute that Yancey's conditions put him at heightened risk of suffering severe symptoms if infected with COVID-19.  Instead, it argues that Yancey is receiving adequate care for these conditions at Butner Medium and that "regrettably, the dangers of COVID-19 would exist whether the defendant is incarcerated or at liberty; it is not at all clear that his risk is heightened by virtue of being in a controlled prison environment."  Doc. 126 at 6.  The Government's contention that Yancey is not at heightened risk at Butner Medium—given his inability to socially distance, the admitted outbreak at Butner Low, and the alleged lack of regular disinfecting of common areas and charge associated with sick calls—is baffling.  If Yancey's contentions are all true, it seems that the risk he faces of contracting COVID-19 at Butner Medium is higher than the risk he would face if he were isolating at home with his family.

However, in spite of this conclusion, the Court must deny Yancey's application. In considering whether to grant relief pursuant to § 3582(c), courts are instructed to

consider "the factors set forth in section 3553(a) to the extent that they are applicable."

18 U.S.C. § 3582(c)(1)(A).  Here, "the nature and circumstances of the offense," are

undoubtedly serious.  18 U.S.C. § 3553(a)(1).  A sentence reduction at this point would

fail both to reflect the "seriousness of the offense" and to afford "adequate deterrence."

*See* 18 U.S.C. § 3553 (a)(2).  Indeed, Yancey has served just over three years of a ten-

year sentence.  More importantly, the Court cannot find that Yancey's release would not

pose a danger to the community.  Since 1991, Yancey has committed numerous crimes,

been incarcerated for lengthy periods of time, and has continued to involve himself in

criminal activity.  The instant offence, for example, was committed while Yancey was on

federal supervised release.  Though the Court appreciates Yancey's stated commitment at

sentencing to avoiding future criminal activity, in this case, it cannot take Yancey at his

word.

## IV.   CONCLUSION

For the foregoing reasons, Yancey's motion is DENIED.  The Clerk of Court is

respectfully directed to terminate the motion, Doc. 123.


SO ORDERED.

Dated:    July 22, 2020
          New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.