UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES,

                Plaintiff,

– against –

ANTHONY SEAN YANCEY,

                Defendant.

**ORDER**

17 Cr. 297

RAMOS, D.J.:

      Before the Court is Anthony Sean Yancey's second application for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] Yancey argues that his sentence should be reduced in light of the COVID-19 pandemic, the heightened risk it presents to him due to his chronic medical conditions, and the "altered" level of punishment that he has experienced over the past two years due to these circumstances. Doc. 133 at 1–3, 8. For the following reasons, Yancey's application is DENIED.

## I. BACKGROUND

### A. Offense Conduct[2]

      On April 18, 2017, while on federal supervised release, Anthony Sean Yancey was arrested along with five other individuals in connection with the attempted sale of approximately three kilograms of heroin to an undercover law enforcement officer. The sale would have totaled over $150,000. At the urging of his former cellmate, who had become a government informant, Yancey took on a central role in the transaction, serving as the undercover officer's primary point of contact and instructing his co-defendants to

---

[1] In its July 22, 2020, Order, the Court denied Yancey's first application, noting that despite the existence of compelling reasons for release, the 18 U.S.C. § 3553(a) factors compelled denial of the application. Doc. 128 at 5–6; 18 U.S.C. § 3582(c)(1)(A)(i).

[2] The Court restates much of the relevant background as set out in its July 22, 2020, Order. *See* Doc. 128 at 1–2.

vet the undercover officer and to send him samples. Though he did not have a firearm during the transaction, some of his co-defendants did.

On December 13, 2017, Yancey pleaded guilty, pursuant to a plea agreement, to conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). At sentencing, Yancey argued that he did not qualify as a career offender pursuant to U.S.S.G. § 4B1.1; however, the Court disagreed. As a result, the calculated guidelines range was 262 to 327 months of imprisonment, with a mandatory minimum of 120 months.

In imposing its sentence, the Court considered several factors, including Yancey's extensive criminal history, along with the fact that he was on federal supervised release at the time of his arrest; the seriousness of the offense; multiple letters of support; and other materials from Yancey's family, coworkers, and friends. At sentencing, the Court remarked that it was a "mystery" how someone with Yancey's family life and potential would repeatedly involve themselves in illegal schemes. Doc. 113 at 57:4–7. The Court also remarked that Yancey's two co-conspirators had each been sentenced to 72 months, but that, even though the conspiracy was non-hierarchical, the Government "[f]or reasons sufficient for themselves" had determined that Yancey ought to be required to plead to a minimum of 120 months.[3] *Id*. at 56:8–14. After considering these factors, the Court imposed a below-guidelines sentence of 120 months, followed by five years of supervised release.[4]

---

[3] As Yancey emphasizes, the three other members of the conspiracy who pleaded guilty have now completed their sentences. Doc. 137 at 1.

[4] Notably, this sentence was also below the calculated guidelines range of 168–210 months of imprisonment that would have been recommended if Yancey had not been designated as a career offender.

2

### B. Incarceration and Medical Conditions

Yancey began serving his sentence on April 17, 2017,[5] and he is currently housed at FCI McDowell in Welch, West Virginia. Doc. 133 at 2, 4. As was true at the time that Yancey filed the instant motion in May 2022, FCI McDowell is operating at Level 2 Operations, meaning that various operation modifications are in place. *Id.* at 2; *see also* Bureau of Prisons ("BOP") Modified Operational Levels, *available at* https://www.bop.gov/coronavirus. Specifically, the Bureau of Prisons notes that, for inmates, face coverings are always required in indoor contexts and outdoors when social distancing is not possible, and social distancing is enforced in all areas. *See* BOP COVID-19 Modified Operations Plan & Matrix, *available at* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp. Additionally, for staff members, face coverings are always required in all indoor contexts and outdoors when social distancing is not possible. *Id.*

As Yancey notes, inmate programming is also limited in several ways. Doc. 133 at 2. For instance, (1) the barber/beauty shop, commissary, inmate phone area, laundry, and law library are operating at limited capacity to allow for social distancing; (2) prison programs and services including educational, psychological, and religious services are operating at limited capacity to allow for social distancing; (3) recreational opportunities are operating at limited capacity to allow for social distancing; (4) visitation is restricted insofar as it is limited to non-contact visits wherein all individuals must wear face coverings; and (5) work opportunities require "cohorting" if social distancing is not possible. BOP COVID-19 Modified Operations Plan & Matrix, *available at* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

---

[5] Yancey has served approximately 66 months of his sentence and had a projected statutory release date of October 24, 2025. Doc. 137 at 10. However, counsel notes that Yancey's projected release date was advanced to October 24, 2024, due to his completion of 1256 program days of Frist Step Act-approved programming. *Id.* at 1, 4–6.

3

These measures are in place to prevent infections, which remain low at FCI McDowell at this time. *See* BOP COVID-19 Cases and Inmate Test Information, *available at* https://www.bop.gov/coronavirus. Indeed, as of October 25, 2022, only four FCI McDowell inmates are positive for COVID-19. *See id.* According to the BOP's website, there have been no inmate or staff deaths attributable to the virus at FCI McDowell. *Id.*

However, despite these precautions and statistics, Yancey claims that social distancing "is impossible" and he "cannot protect himself" from the spread of COVID-19. Doc. 133 at 2. Yancey also reiterates various health-related justifications for release. *Id.* at 2–3. He underscores that he suffers from obesity, hypertension, and pre-diabetes, in addition to hemorrhoids and the health effects of a bacterial infection. *Id.* at 1–3. Additionally, Yancey notes that the COVID-19 pandemic has strained his mental health, taking a particular toll on his anxiety. *Id.* at 3. He notes that he has been infected with COVID-19 on two occasions, both of which have added to the strain on his mental health. *Id.* Finally, Yancey argues that the "unprecedented" conditions of confinement during the COVID-19 pandemic, which have included frequent quarantines and isolation, weigh in favor of compassionate release. *Id.*

The Government describes the state of the pandemic at FCI McDowell, as well as Yancey's specific medical needs, differently. It first notes its position that the pandemic is no longer an extraordinary and compelling reason for release, particularly where inmates have received vaccinations that protect against severe infections. Doc. 135 at 2 (citing *United States v. Mena*, 16 Cr. 850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) (concluding that access to approved vaccines cuts against compassionate release that is based on the risks brought by COVID-19)). Coupled with the steps that BOP continues to take to curb the spread of COVID-19, the Government contends that Yancey no longer qualifies for a sentence reduction based on the dangers of the pandemic, despite his comorbidities. *Id.* at 2–3. The Government further notes its position that Yancey's

4

medical conditions are being adequately treated by the BOP. *Id.* at 3. Finally, the Government notes that difficult conditions of confinement caused by the pandemic are not unique to Yancey, and are accordingly not "extraordinary." *Id.*

### C. Exhaustion and the Instant Application

Yancey filed an application for compassionate release with the warden at FCI McDowell on January 3, 2022. Doc. 133 at 1 n.1. Over thirty days passed, and the record does not show that the warden addressed Yancey's application. As such, Yancey filed this motion for compassionate release on May 4, 2022. Doc. 133. The Government submitted its opposition on May 18, 2022, Doc. 135, and Yancey filed his reply on June 3, 2022, Doc. 136.

On October 21, 2022, Yancey provided the Court with a letter update regarding his progress while incarcerated and in further support of his motion for compassionate release. Doc. 137. The Government replied on October 24, 2022. Doc. 139.

## II.  LEGAL STANDARD

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Crim. 528, 2020 WL 1700032 (JMF), at *1 S.D.N.Y. Apr. 8, 2020 (citing 18 U.S.C. § 3582(c)(1)(A)). A court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling." *See*

U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D). The BOP Policy Statement includes as an "extraordinary and compelling" reason the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I). It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* at § 1B1.13(2).

Additionally, as the Second Circuit determined in *United States v. Brooker*, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *See* 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t)).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . ; and the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a).

### III. DISCUSSION

As a preliminary matter, the Court notes that Yancey adequately exhausted all administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A); *see also* Doc. 133 at 1 n.1. Accordingly, Yancey's application rests upon whether he has shown extraordinary and compelling reasons for compassionate release and whether the § 3553(a) factors weigh in favor of release at this time. 18 U.S.C. § 3582(c)(1)(A)(i).

First, the Court considers Yancey's argument that extraordinary and compelling reasons for compassionate release continue to exist. Yancey asks the Court to reduce his sentence "for two reasons: (1) the continued risk to his health, which the Government previously conceded was an 'extraordinary and compelling reason' worthy of compassionate release and (2) the pandemic altered the level of punishment that Mr. Yancey experienced over the past two years in Butner and McDowell." Doc. 133 at 8. The Government counters that extraordinary and compelling reasons no longer exist as to Yancey because of ubiquitous access to vaccines, BOP's efforts to limit the spread of COVID-19, the low numbers of COVID-19 cases at FCI McDowell, and the universal nature of challenging confinement conditions. Doc. 135 at 2–3.

While the Court acknowledges that several facts have changed since Yancey filed his first application—including his two-dose vaccination to protect against severe illness stemming from COVID-19—the Court need not revisit its prior conclusion regarding the heightened risks that Yancey faces due to his medical conditions. *See* Doc. 128 at 5; *see also* Doc. 135 at 2. Indeed, the Court finds that despite those risks, the § 3553(a) factors continue to weigh against release at this time.

As the Court emphasized in its July 2020 Order in response to Yancey's first application for compassionate release, "the nature and circumstances of the offense" in this case are serious. *See* Doc. 128 at 6; *see supra* p. 2. At sentencing, the Court emphasized that "this was a very serious offense committed by an individual who has been in this situation, in this precise situation, standing before a judge, including a federal

7

judge, and asking for leniency." Doc. 113 at 53.  Furthermore, although approximately two years have passed since the Court's previous Order as to Yancey's first compassionate release application, a sentence reduction at this stage would still fail both to reflect the "seriousness of the offense" and to afford "adequate deterrence."  *See* 18 U.S.C. § 3553(a)(2).  Yancey has served only approximately half of a ten-year sentence—one that was set to a significantly shorter term of imprisonment than that provided by the applicable guidelines range.  *See supra* p. 2.

Most importantly, the Court still cannot find that Yancey's release would not pose a danger to the community.  As the Court previously noted, and as the Government reiterates here, Yancey's criminal record includes eleven convictions stemming back to 1991.  *See* Doc. 128 at 6; Doc. 135 at 4.  Yancey served several lengthy sentences, and, despite those sentences, he continued to involve himself in criminal activity.  *See* Doc. 113 at 53–54; Doc. 128 at 6.  Indeed, Yancey committed the instant offense while he was on federal supervised release.

The Court takes note of and commends the rehabilitative milestones that Yancey has accomplished over the past several years.  Doc. 133 at 3–7.  However, in its compassionate release analysis, Yancey's medical conditions and rehabilitative successes are overcome by its application of the § 3553(a) factors.  *See* 18 U.S.C. § 3582(c)(1)(A). Accordingly, for the foregoing reasons, Yancey's motion is DENIED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 133.

IT IS SO ORDERED.

Dated:   October 26, 2022
         New York, New York

EDGARDO RAMOS, U.S.D.J.